No. 19-1594

# In the United States Court of Appeals for the Eighth Circuit

John Doe,

Plaintiff – Appellant,

v.

University of St. Thomas,

Defendant – Appellee,

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civ. No. 16-cv-1127, Hon. John R. Tunheim

**AMICUS CURIAE BRIEF OF
MINNESOTA PRIVATE COLLEGE COUNCIL**

Sean R. Somermeyer
Joshua N. Turner
FAEGRE BAKER DANIELS LLP
90 S. 7th Street, Suite 2200
Minneapolis, Minnesota 55402
T: (612) 766-7000
Sean.Somermeyer@FaegreBD.com
Josh.Turner@FaegreBD.com

*Counsel for Minnesota Private College Council*

# TABLE OF CONTENTS

**Page**

MINNESOTA PRIVATE COLLEGE COUNCIL ..............................................1

SUMMARY OF THE ARGUMENT ........................................................2

ARGUMENT ...............................................................................3

I.  Minnesota Law Does Not Support The District Court's "Reasonable Care" Standard ...............................................................................4

    A.  Private colleges and universities do not owe students broad, tort-based duties nor do they owe constitutional duties. ........................................4

    B.  The district court erred in imposing a broad, ill-defined common-law duty on private colleges and universities in Minnesota. ...................................7

II.  A "Reasonable Care" Standard Would Undermine Private Colleges' Educational Mission ........................................................................11

    A.  A reasonable care standard would pressure private institutions to homogenize student disciplinary proceedings and threatens their academic freedom. ...................................................................11

    B.  Applying a "reasonableness" standard to student disciplinary decisions will encourage litigation and divert resources away from education. ...............16

III.  Even If The District Court's Reasonableness Standard Were Correct, There Is No Basis To Require Cross-Examination And Such A Requirement Would Be Detrimental To Private Colleges And Universities. .........18

    A.  The overwhelming majority of courts hold that public institutions are not required to provide cross-examination, and there is no basis to set a higher standard for private institutions. ..........................................19

    B.  Requiring cross-examination is impractical and poses collateral consequences. ................................................................21

CONCLUSION ...........................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Action Tapes, Inc. v. Mattson,*
462 F.3d 1010 (8th Cir. 2006) ........................................................................18

*Baxter v. Palmigiano,*
425 U.S. 308 (1976) ........................................................................................24

*Bd. of Curators of Univ. of Missouri v. Horowitz,*
435 U.S. 78 (1978) ...............................................................................9, 11, 19

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,*
531 U.S. 288 (2001) ..........................................................................................5

*Brewer by Dreyfus v. Austin Indep. Sch. Dist.,*
779 F.2d 260 (5th Cir. 1985) ..........................................................................19

*Caston v. Benton Pub. Sch.,*
No. 4:00 CV 00215 WKU, 2002 WL 562638 (E.D. Ark. Apr. 11,
2002) ................................................................................................................23

*Corso v. Creighton Univ.,*
731 F.2d 529 (8th Cir. 1984) .............................................................................5

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.,*
526 U.S. 629 (1999) ........................................................................................17

*Dixon v. Ala. State Bd. of Educ.,*
294 F.2d 150 (5th Cir. 1961) ....................................................................20, 23

*Doe v. Baum,*
903 F.3d 575 (6th Cir. 2018) ..........................................................................20

*Doe v. Brandeis Univ.,*
177 F. Supp. 3d 561 (D. Mass. 2016) .............................................................15

*Doe v. Univ. of Cincinnati,*
872 F.3d 393 (6th Cir. 2017) ..........................................................................18

*Flaim v. Med. Coll. of Ohio,*
418 F.3d 629 (6th Cir. 2005) .............................................................................9

Appellate Case: 19-1594     Page: 3     Date Filed: 07/15/2019 Entry ID: 4808041

*Freeman v. Busch,*
   349 F.3d 582 (8th Cir. 2003) ...................................................................5

*Gillis v. Principia Corp.,*
   832 F.3d 865 (8th Cir. 2016) .................................................................15

*Gomes v. Univ. of Maine Sys.,*
   365 F. Supp. 2d 6 (D. Me. 2005) ...........................................................22

*Gorman v. Univ. of Rhode Island,*
   837 F.2d 7 (1st Cir. 1988) ............................................................... 9, 19

*Goss v. Lopez,*
   419 U.S. 565 (1975) ....................................................................... passim

*Grove City Coll. v. Bell,*
   465 U.S. 555 (1984) ...............................................................................6

*Magee v. Trustees of Hamline Univ., Minn.,*
   747 F.3d 532 (8th Cir. 2014) ...................................................................5

*Manhattan Cmty. Access Corp. v. Halleck,*
   587 U.S. ___, 139 S.Ct. 1921 (2019) .......................................................5

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ........................................................................ 9, 19

*N.S. by & through J.S. v. Tennessee Dep't of Educ.,*
   No. 3:16-CV-0610, 2017 WL 1347753 (M.D. Tenn. Apr. 12, 2017) ........................14

*Naca v. Macalester Coll.,*
   No. 16-cv-3263, 2018 WL 4516950 (D. Minn. Sept. 20, 2018) ....................8

*Nash v. Auburn Univ.,*
   812 F.2d 655 (11th Cir. 1987) ...............................................................19

*Newsome v. Batavia Local Sch. Dist.,*
   842 F.2d 920 (6th Cir. 1988) .................................................... 19, 23, 24

*Norris v. Univ. of Colorado, Boulder,*
   362 F. Supp. 3d 1001 (D. Colo. 2019) ...................................................16

*O.R.S. Distilling Co. v. Brown–Forman Corp.,*
   972 F.2d 924 (8th Cir. 1992) .................................................................18

Appellate Case: 19-1594    Page: 4    Date Filed: 07/15/2019 Entry ID: 4808041

*Osteen v. Henley*,
13 F.3d 221 (7th Cir. 1993) .......................................................... 14, 17, 19, 24

*Regents of Univ. of Michigan v. Ewing*,
474 U.S. 214 (1985) ................................................................................ 10, 15

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ........................................................................................ 5

*Schumacher v. Argosy Educ. Grp., Inc.*,
No. CIV 05-531, 2006 WL 3511795, at \*11 (D. Minn. Dec. 6, 2006) ...................... 8

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969) ....................................................................................... 15

*Winnick v. Manning*,
460 F.2d 545 (2d Cir. 1972) .......................................................................... 20

## STATE CASES

*Abbariao v. Hamline Univ. Sch. of Law*,
258 N.W.2d 108 (Minn. 1977) ................................................................. passim

*Alsides v. Brown Inst., Ltd.*,
592 N.W.2d 468 (Minn. Ct. App. 1999) ........................................................ 17

*Gleason v. Univ. of Minnesota*,
116 N.W. 650 (Minn. 1908) ........................................................................... 7

*Jindra v. City of St. Anthony*,
533 N.W.2d 641 (Minn. Ct. App. 1995) ........................................................ 17

*Ponticas v. K.M.S. Investments*,
331 N.W.2d 907 (Minn. 1983) ...................................................................... 17

*Rollins v. Cardinal Stritch Univ.*,
626 N.W.2d 464 (Minn. Ct. App. 2001) ................................................. 8, 10, 21

*Zellman ex rel. MZ v. Indep. Sch. Dist. No. 2758*,
594 N.W.2d 216 (Minn. Ct. App. 1999) ........................................................ 20

## FEDERAL STATUTES

29 U.S.C. § 794(b)(3)(A)(ii) ............................................................................... 6

iv

20 U.S.C. § 1232g .............................................................................6

**RULES**

Fed. R. App. P. 29(a)(4)(E) ...............................................................2

**REGULATIONS**

34 C.F.R. § 99.30 .............................................................................6

34 C.F.R. § 106.8 .............................................................................6

34 C.F.R. § 668.46 ...........................................................................6

83 Fed. Reg. 61462-01, 2018 WL 6198266 (Nov. 16, 2018) (to be
    codified at 34 C.F.R. pt. 106) ......................................................6

v

# MINNESOTA PRIVATE COLLEGE COUNCIL

The Minnesota Private College Council ("MPCC") was founded in 1948 to advance the interests of private, nonprofit colleges and universities in Minnesota. Today, MPCC represents 17 colleges and universities, one of which is Appellee University of St. Thomas ("UST").[1] Although each institution differs in terms of specific mission, values, size, student-body composition, location, and academic offerings, they all share a liberal arts educational mission. MPCC engages in various activities to advance the core interests of its members, including public policy advocacy.

The district court's opinion[2] below threatens the vitality of MPCC members' educational missions by turning educational programs into legal proceedings—potentially exposing them to a cascade of litigation inviting courts to second-guess the reasonableness of private, non-governmental institutions' professional educational judgments regarding student disciplinary matters.

---

[1]     The other 16 are: Augsburg University; Bethany Lutheran College; Bethel University; Carleton College; College of St. Benedict; College of St. Scholastica; Concordia College - Moorhead; Concordia University - St. Paul; Gustavus Adolphus College; Hamline University; Macalester College; Minneapolis College of Art and Design; St. John's University; Saint Mary's University of Minnesota; St. Catherine University; and St. Olaf College.

[2]     The district court's summary judgment decision below, Dkt. 296, is cited herein as "Order."

Appellate Case: 19-1594     Page: 7     Date Filed: 07/15/2019 Entry ID: 4808041

MPCC has a strong interest in protecting its members' core purpose of educating students from this adversarial encroachment. It is therefore well-positioned to address the district court's error and its impact on private colleges and universities in Minnesota. Accordingly, and with the Court's leave, MPCC submits this amicus brief in support of UST.[3]

## SUMMARY OF THE ARGUMENT

For over 100 years, Minnesota common law has imposed a duty on private colleges and universities not to expel students arbitrarily. Notwithstanding this duty's deep roots, the district court rejected it and imposed an entirely new duty of "reasonable care" on private institutions in making student disciplinary decisions. Although there is no hint of support for a reasonable care standard in the case law, the district court nevertheless made new law for Minnesota—law that stands in direct conflict with the long-standing and unambiguous pronouncements of the Minnesota Supreme Court and Minnesota Court of Appeals.

Moreover, the district court did not limit its newfangled holding to sexual misconduct cases like the one below. It created a new standard that purports to govern all student misconduct matters. Student discipline imposed by a private

---

[3]    This brief has been authored by counsel for MPCC. Neither UST, its counsel, nor any other person has funded the preparation or filing of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

Appellate Case: 19-1594    Page: 8    Date Filed: 07/15/2019 Entry ID: 4808041

institution for everything from bar fights to graffiti will now be reviewable by a court under a "reasonableness" standard.

Private colleges and universities in Minnesota have no desire to treat students unreasonably. They already go to great lengths to design and implement disciplinary procedures that are focused on education and fairness. Despite the district court's stated concerns, a vague and undefined reasonable care standard will not lead to better outcomes for students at private institutions. Instead, it will stifle the unique ways private colleges and universities put their missions and values in practice, interfere with their academic freedom to provide their students with an institution-specific educational experience, and change discipline from a restorative and educational tool to an adversarial and legalistic one.

The district court broke from over a century of precedent. This break lacks any basis in law, and it also poses serious secondary consequences. There is ample reason that this Court should return Minnesota law to its original state.

## ARGUMENT

The district court was tasked with applying Minnesota common law, but it imposed a duty of reasonable care on private colleges and universities that Minnesota courts had never before mentioned, let alone applied, in the student disciplinary context. The court's newly-crafted duty was based on its speculation that *Abbariao v. Hamline Univ. Sch. of Law*, 258 N.W.2d 108, 113 (Minn. 1977), "implied" something

Appellate Case: 19-1594    Page: 9    Date Filed: 07/15/2019 Entry ID: 4808041

akin to reasonable care, even though for over forty years no other court had ever divined such an implication from *Abbariao*.

The district court's error is also bad policy. It threatens the freedom of private colleges and universities to educate their students in line with their specific missions and values. It will negatively impact student life by diverting resources away from education and by encouraging litigation rather than restoration. And it marks a significant departure from the deferential respect courts have historically accorded colleges and universities—especially private ones—in this area.

Last, Appellant goes beyond the district court's error and argues that he must be afforded a right to cross-examine his accuser. No Minnesota court has ever required a private university to allow cross-examination, and this Court should not be the first.

## I.  Minnesota Law Does Not Support The District Court's "Reasonable Care" Standard

The legal relationship between a private college or university and its students is one in which a private entity engages with a private individual to further the individual's educational development. The law has recognized, and the district court disregarded, important principles of this unique relationship.

### A.  Private colleges and universities do not owe students broad, tort-based duties nor do they owe constitutional duties.

This Court has held that colleges and universities do not act *in loco parentis*, nor is there a "special relationship" between a college and its students that gives rise to

4

broad, tort-based duties. *See Freeman v. Busch*, 349 F.3d 582, 587 (8th Cir. 2003). The relationship between a college and its students is generally "contractual in nature." *Corso v. Creighton Univ.*, 731 F.2d 529, 531 (8th Cir. 1984).[4] Disciplinary decisions are carried out against this backdrop and in the context of the private institution's educational mission.

Disciplinary decisions of private institutions are also not governed by constitutional due process. Private universities are only subject to constitutional standards to the extent they are state actors. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 536 (8th Cir. 2014). And as the Supreme Court has held, private universities are generally not state actors. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838-43 (1982) (holding that a private school, even one that receives almost all of its funding from the state, is not a state actor). The state-action doctrine provides "a critical boundary" between the government and the individual and is meant to "protect[] a robust sphere" of private activity. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ___, 139 S.Ct. 1921, 1934 (2019). Private colleges and universities—with their unique histories, values, affiliations, and cultures—occupy an important place in that "robust sphere." *Id.*

---

[4]     But even contract law isn't a perfect fit. Courts have rejected "rigid importation of contractual doctrine" as "interfering beyond an acceptable degree in [a college or university's] discretion to manage its affairs." *Abbariao*, 258 N.W.2d at 113-14.

Appellate Case: 19-1594     Page: 11     Date Filed: 07/15/2019 Entry ID: 4808041

That is not to say private institutions are free from regulation. Quite to the

contrary. Congress, through the spending clause, has imposed sundry obligations on

private colleges and universities that accept federal funding. *Grove City Coll. v. Bell*, 465

U.S. 555, 575–576 (1984); 29 U.S.C. § 794(b)(3)(A)(ii). These include, as just one

example of many, requirements for investigating and resolving claims of student

sexual harassment or assault. *See* 34 C.F.R. § 106.8; 34 C.F.R. § 668.46.[5] They also

include strict limitations on a private college or university's ability to share student

information. *See generally*, Family Educational Rights and Privacy Act, 20 U.S.C. §

1232g; 34 C.F.R. Part 99.[6]

---

[5]     In November 2018 the U.S. Department of Education issued proposed
regulations relating to responsibilities of educational institutions in responding to
incidents of sexual misconduct by students. *See* 83 Fed. Reg. 61462-01, 2018 WL
6198266 (Nov. 16, 2018) (to be codified at 34 C.F.R. Part 106). The proposed
regulations, which would impose detailed requirements for investigating and
adjudicating sexual misconduct complaints (including requiring a live hearing with
cross-examination), have generated over 100,000 public comments. *Id.*; Conor
Friedersdorf, *The ACLU Moves to Embrace Due Process on Title IX*, THE ATLANTIC Feb.
8, 2019, https://www.theatlantic.com/ideas/archive/2019/02/aclu-title-ix/582118/.

    MPCC contributed its comments on the proposed regulations through a letter
from the American Council on Education. *See* https://www.acenet.edu/news-
room/Documents/Comments-to-Education-Department-on-Proposed-Rule-
Amending-Title-IX-Regulations.pdf. (last visited July 12, 2019).

[6]     The district court's observation that violations of university policy can "affect
students in significant and permanent ways"—presumably by harming a student's
reputation—overlooks the reality that disclosure of student disciplinary action
generally would first require the written authorization of the disciplined student. *See*
34 C.F.R. § 99.30.

6

**B.    The district court erred in imposing a broad, ill-defined common-law duty on private colleges and universities in Minnesota.**

Minnesota courts have consistently imposed a narrow common-law duty on colleges and universities not to expel students arbitrarily. This limited duty was first recognized in *Gleason v. Univ. of Minnesota*, 116 N.W. 650 (Minn. 1908), and was later reaffirmed in *Abbariao*.

In *Abbariao*, the Minnesota Supreme Court addressed two claims related to the academic dismissal of a law student. One was grounded in constitutional due process and based on the plaintiff's allegation that Hamline, a private university, was a state actor. 258 N.W.2d at 111-12. The other was grounded in Minnesota common law. *Id.* First, the court explained that constitutional due process, which governs public universities and not private ones, provides courts with a basis to intervene when "a student's expulsion results from arbitrary, capricious, or bad-faith actions of university officials." *Id.* at 112. Second, the disciplinary decisions of private colleges, on the other hand, are subject to a common-law duty "not to expel students in an arbitrary manner." *Id.*

In dicta, the *Abbariao* court compared this duty to its earlier constitutional due process discussion, observing that "[t]he requirements imposed by the common law on private universities parallel those imposed by the due process clause on public universities." *Id.* at 113. But the comparison merely reinforced the court's central holding that a private college owes a duty to not act arbitrarily.

7

Since *Abbariao*, courts have continued to recognize that the duty under Minnesota law is not to act arbitrarily in rendering disciplinary decisions. *See, e.g., Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464, 469 (Minn. Ct. App. 2001); *Naca v. Macalester Coll.*, No. 16-cv-3263 (PJS/BRT), 2018 WL 4516950, at *20 (D. Minn. Sept. 20, 2018) (Schiltz, J.); *Schumacher v. Argosy Educ. Grp., Inc.*, No. CIV 05-531 DWF/AJB, 2006 WL 3511795, at *11 (D. Minn. Dec. 6, 2006) (Frank, J.).

The district court's decision that Minnesota law requires "a private university [to] use reasonable care before making disciplinary decisions" is unprecedented. (Order at 10.) The district court did not limit itself to interpreting Minnesota law but instead made new law—doing what no Minnesota court has ever done in holding that a private university's disciplinary decision is governed by a "reasonable care" standard. Nor has any federal court interpreted Minnesota law to impose such a duty. It bears repeating, the district court is the first court—state or federal—to interpret *Abbariao* (a 42-year-old decision) as "necessarily impl[ying]" a standard of reasonable care for disciplinary decisions involving student misconduct. (Order at 11.)

The district court's novel duty was based on an incorrect reading of *Abbariao*, relying heavily on *Abbariao*'s discussion of the different protections for disciplinary and academic expulsions under the Due Process Clause. (Order at 10-11.) The court then superimposed that distinction on the common-law duty private colleges owe when it created distinct *duties* for academic and disciplinary expulsions. *Id.* The district court conflated *requirements* under due process with *duty* under the common law. The

8

procedures colleges provide in rendering non-arbitrary decisions may change with the circumstances (i.e., the academic or non-academic nature of the decision or the severity of the potential sanction), but contrary to the district court's holding, changed circumstances do not alter the common-law duty owed.

In other words, this "parallels" the constitutional due process that public colleges and universities owe their students: different protections may be required depending on the nature of the disciplinary matter and the severity of the punishment. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (noting that "the nature of the hearing will depend on appropriate accommodation of the competing interests involved"); *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 14 (1st Cir. 1988) ("Beyond the right to notice and hearing, the span of procedural protections required to ensure fairness becomes uncertain, and must be determined by a careful weighing or balancing of the competing interests implicated in the particular case.")

Stated differently, due process is flexible. *See Goss*, 419 U.S. at 579. In general, more serious disciplinary consequences merit more procedural protections. *E.g., Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 643 (6th Cir. 2005); *see also Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) (noting that "the severity of the deprivation is only one of several factors that must be weighed in deciding the exact due process owed"). Nevertheless, due process does not demand that universities "formaliz[e] the suspension process and escalat[e] its formality and adversary nature" because doing so

9

would "make it too costly as a regular disciplinary tool" and "also destroy its effectiveness as part of the teaching process." *Goss*, 419 U.S. at 583.

Similarly, under Minnesota law, the disciplinary processes followed by private colleges and universities are permitted to be flexible, so long as they do not expel students arbitrarily. A court asking whether a college rendered an arbitrary decision is very different from a court (or more likely a jury) asking whether a college exercised reasonable care in making a disciplinary decision.

Moreover, even if the district court's extrapolation from *Abbariao*'s discussion of "different protections" and "safeguards" were valid, its conclusion is not. *Abbariao*'s discussion there was grounded in the Due Process Clause, which is governed by an arbitrary standard. *See Goss*, 419 U.S. at 574 (applying arbitrary standard to student disciplinary matter); *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214 (1985) (same). It was error for the district court to untether itself from the settled standard of arbitrariness and to impose a new duty on private universities.

*Rollins* highlights the error. There, the Minnesota Court of Appeals reinforced that the duty Minnesota common law imposes on private colleges in making decisions about expulsion—for academic reasons or otherwise—is a duty not to act arbitrarily. *Rollins,* 626 N.W. 2d at 470. *Rollins* made this clear by applying the duty to a student misconduct matter, not an academic violation. *Id.* at 466-67. That *Rollins* clearly involved non-academic misconduct dispels the district court's key premise that the "arbitrary standard" was limited to "academic violations." (Order at 11.)

10

Because the district court's holding went far beyond (and in fact, rejected) the well-established "arbitrary" standard for judicial review of a student disciplinary action by a private institution, this Court should correct the district court's error.

## II.  A "Reasonable Care" Standard Would Undermine Private Colleges' Educational Mission

The reasonable care standard that the district court imposed on private colleges and universities would work a sea change in higher education in Minnesota. Colleges and universities exist to educate their students—they are "courtroom[s] or administrative hearing room[s]." *Horowitz*, 435 U.S. at 88. Yet, the district court's standard would force educational institutions to divert precious resources away from education and thrust these institutions into endless litigation, subjecting every disciplinary decision to a fact-intensive judicial inquiry. The new standard also impermissibly interferes with the academic freedom of private colleges and universities. This is bad law and bad policy.

### A.  A reasonable care standard would pressure private institutions to homogenize student disciplinary proceedings and threatens their academic freedom.

The district court's reasonable care standard would flatten the variety of disciplinary policies and procedures that private institutions currently employ. MPCC members share the common goal of providing an excellent education to all of their students, and they all are committed to providing their students with an educational environment, programs, and processes that effectively support that goal. However,

11

each MPCC member—like every college and university across the country, whether private or public—has an individualized educational mission, values, and organizational culture.

For instance, the missions and values of several MPCC institutions are informed by a religious tradition. *E.g.* Gustavus Adolphus College – Mission Statement ("Developing a mature understanding of the Christian faith tradition");[7] Augsburg University – Mission Statement ("An Augsburg education is . . . guided by the faith and values of the Lutheran church");[8] Bethel University – Mission Statement ("Boldly informed and motivated by the Christian faith");[9] College of St. Scholastica – Mission Statement ("Shaped by the Catholic Benedictine heritage");[10] Saint Mary's University – Mission Statement ("Enriched by the Lasallian Catholic heritage").[11] Some MPCC members recognize a cultural heritage. *E.g.* St. Olaf College – Mission Statement (informed by the "founders of the College [who] were immigrants from Norway").[12] Others are expressly or impliedly non-sectarian. *E.g.*, Macalester College

---

[7]    https://gustavus.edu/faith/mission.php (last visited July 12, 2019).

[8]    https://www.augsburg.edu/about/mission/ (last visited July 12, 2019).

[9]    https://www.bethel.edu/about/mission-vision (last visited July 12, 2019).

[10]    http://www.css.edu/about/mission-and-vision.html (last visited July 12, 2019).

[11]    https://www.smumn.edu/about/mission-vision (last visited July 12, 2019).

[12]    https://wp.stolaf.edu/about/mission/ (last visited July 12, 2019).

Appellate Case: 19-1594    Page: 18    Date Filed: 07/15/2019 Entry ID: 4808041

– Mission Statement;[13] Carleton College – Mission Statement.[14] The missions and values of each MPCC institution form the basis for their unique cultures and identities and attract different students, faculty, and staff.

Minnesota private colleges and universities also have different policies and procedures for different types of student disciplinary issues. Many, if not all, MPCC member institutions distinguish between academic misconduct, sexual misconduct, and general/social misconduct (such as underage drinking or vandalism). Institutions respond to allegations of misconduct within these categories in different ways. For example, some institutions have panels of community members hear and make decisions on responsibility for policy violations, *see, e.g.,* Carleton Title IX Policy[15] and Gustavus Title IX Policy,[16] while others have a single adjudicator (often a staff

---

[13]    https://www.macalester.edu/about/mission/ (last visited July 12, 2019).

[14]    https://apps.carleton.edu/handbook/governance/?policy_id=864117 (last visited July 12, 2019).

[15]    Carleton uses a "Community Board on Sexual Misconduct" as the adjudicator. https://apps.carleton.edu/dos/sexual_misconduct/assets/Student_procedures_update _Oct_19_2017.pdf (last visited July 12, 2019).

[16]    Gustavus uses a "Sexual Misconduct Board." https://gustavus.edu/deanofstudents/policies/gustieguide/sexualmisconduct.php (last visited July 12, 2019).

member) gather facts and determine responsibility. *See, e.g.,* St. Olaf Title IX Policy;[17]
St. Scholastica Title IX Policy.[18]

Students who join educational communities are subject to both academic and
non-academic expectations, and student discipline for violations of these expectations
is an integral part of the education delivered by colleges and universities. As many
courts have recognized, there is a pedagogical function that is central to student
discipline. *See, e.g., Goss*, 419 U.S. at 580, 583 (recognizing student discipline as "a
valuable educational device" and "part of the teaching process"); *N.S. by & through J.S.
v. Tennessee Dep't of Educ.*, No. 3:16-CV-0610, 2017 WL 1347753, at *11 (M.D. Tenn.
Apr. 12, 2017) ("The discipline of students is primarily educational in nature.") The
variety of processes reflected in MPCC's member institutions is representative of the
academic freedom critical to higher education, which courts should protect and not
suppress. *See Osteen v. Henley*, 13 F.3d 221, 225-26 (7th Cir. 1993) (recognizing "that
one dimension of academic freedom is the right of academic institutions to operate
free of heavy-handed governmental, including judicial, interference").

---

[17]     St. Olaf uses a single investigator to render the initial decision, which can be
appealed to a board later. https://wp.stolaf.edu/title-ix/files/2018/09/StO_College-
Policy_Updated_20180901.pdf (last visited July 12, 2019).

[18]     St. Scholastica normally uses a single adjudicator.
http://resources.css.edu/hr/docs/ist_hr_college_of_st_scholastica_sexual_misconduc
t_policy.pdf (last visited July 12, 2019).

Appellate Case: 19-1594     Page: 20     Date Filed: 07/15/2019 Entry ID: 4808041

A reasonable care standard, and its attendant indefinite requirements, threatens the academic freedom of higher education institutions. *Ewing*, 474 U.S. at 226 ("Added to our concern for lack of standards is a reluctance to trench on the prerogatives of state and local educational institutions and our responsibility to safeguard their academic freedom[.]"). The district court paid no heed to this cornerstone principle.

The educational professionals at each college and university exercise their collective judgments to make decisions about which students they will educate, and how best to deliver their educational programs, based on their differentiated missions, values, and cultures. The different ways institutions regulate their campuses is part of the unique culture of the college or university, and "courts must recognize and respect the strong interest of a private university in managing its own affairs." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969) (stating that "the Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools").

Subjecting private universities to a vague and amorphous standard of care could force them to sacrifice values that are important and unique to their institution. And if that doesn't occur, courts applying a nebulous reasonable care standard will quickly find themselves embroiled in litigation around these values. *Cf. Gillis v.*

15

*Principia Corp.*, 832 F.3d 865, 873 (8th Cir. 2016) (refusing to treat biblical passage as a legally enforceable standard governing disciplinary proceedings). Neither outcome is desirable.

### B.  Applying a "reasonableness" standard to student disciplinary decisions will encourage litigation and divert resources away from education.

The district court's decision will almost certainly lead to a wave of litigation against private colleges and universities from students claiming that the institution did not meet its "duty of reasonable care" in handling a disciplinary matter.[19] The district court's opinion previews the fact-intensive inquiries courts will be required to undertake as part of a reasonableness inquiry. (Order at 10-18 (noting determination will "depend on the circumstances of each case")).

Rather than simply ensuring that the university's disciplinary decision isn't arbitrary, courts will now have to ask whether there is evidence that a university acted reasonably throughout the disciplinary process, including in making credibility assessments. (Order 17.) Courts will scrutinize university policies and may or may not use them as evidence of a standard of care. (Order 15-18.) The reasonable care standard will require courts to look beyond the defendant-university's handling of

---

[19]    Changes to federal guidance applicable *only* to sexual misconduct matters already resulted in a "wave of litigation" brought by disciplined students. *Norris v. Univ. of Colorado, Boulder*, 362 F. Supp. 3d 1001, 1014 (D. Colo. 2019). The district court's "reasonableness" standard is broader and applies to *all* student disciplinary decisions, not just those involving sexual misconduct.

16

disciplinary matters and subject each step of the process to the ultimate question of reasonableness.

It is no exaggeration to say that the district court's standard would endlessly expand judicial inquiry into an already-difficult question for courts to address. This is precisely why Minnesota courts have rejected "claims for educational malpractice; claims that would require the court to engage in a 'comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies.'" *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 473 (Minn. Ct. App. 1999). Other courts have likewise been reluctant to undertake similar inquiries. *See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (refraining from "second-guessing the disciplinary decisions made by school administrators").

Not only will this lead to more litigation, but it will also protract it. Summary disposition will be far less frequent under a reasonableness as compared to an arbitrary standard. *Cf. Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 913 (Minn. 1983) (holding that whether a defendant exercised reasonable care is generally a jury question); *Jindra v. City of St. Anthony*, 533 N.W.2d 641, 644 (Minn. Ct. App. 1995) (same). With more litigation and longer litigation, finite institutional resources will be diverted away from educating students. *Osteen*, 13 F.3d at 225 (decrying the "cost and complexity" of casting universities into litigation-like proceedings and noting the detriment to "discipline as well as [to] the university's fisc"); *Goss*, 419 U.S. at 583 (cautioning against diverting resources to trial-type procedures, which would "cost

17

more than [they] would save in educational effectiveness"). Even if the reasonable care standard stops short of converting classrooms into courtrooms—and that is far from certain—the cost of complying with it would detract from a university's core purpose, making education a secondary priority to adjudication. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017).

## III. Even If The District Court's Reasonableness Standard Were Correct, There Is No Basis To Require Cross-Examination And Such A Requirement Would Be Detrimental To Private Colleges And Universities.

Appellant argues that the district court's reasonable care standard requires private colleges and universities to permit "some form of cross-examination" to students accused of misconduct. (Appellant Br. at 45.) It appears Appellant failed to raise this argument below since the district court never addressed it, and this Court shouldn't either. *See Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1014 (8th Cir. 2006) (declining to reverse a grant of summary judgment based upon an argument not raised below); *O.R.S. Distilling Co. v. Brown–Forman Corp.*, 972 F.2d 924, 926 (8th Cir. 1992) (holding that the party opposing summary judgment waived arguments by failing to present them to the district court). Even if the Court overlooks Appellant's waiver, the argument is wholly without merit.

### A. The overwhelming majority of courts hold that public institutions are not required to provide cross-examination, and there is no basis to set a higher standard for private institutions.

The idea of bringing cross-examination to student disciplinary proceedings isn't new. Many courts have considered whether constitutional due process demands a right of cross-examination in the public school context and have sensibly and repeatedly answered "no." *See, e.g., Horowitz*, 435 U.S. at 85–86 ("All that *Goss* required was an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'"); *Henley*, 13 F.3d at 225 (Accused's "lawyer need not be allowed to participate in the proceeding in the usual way of trial counsel, as by examining and cross-examining witnesses and addressing the tribunal."); *Gorman*, 837 F.2d at 16 ("As for the right to cross-examination, suffice it to state that the right to unlimited cross-examination has not been deemed an essential requirement of due process in school disciplinary cases."); *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 925 (6th Cir. 1988) (applying *Mathews* balancing to "hold that the burden of cross-examination on the administration of school discipline outweighs the benefits to be derived from that procedure"); *Nash v. Auburn Univ.,* 812 F.2d 655, 664 (11th Cir. 1987) (rejecting argument that due process requires cross-examination of witnesses); *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 263 (5th Cir. 1985) (refusing to require a right to cross-examination and "reject[ing] any suggestion that the technicalities of criminal procedure ought to be transported into

Appellate Case: 19-1594    Page: 25    Date Filed: 07/15/2019 Entry ID: 4808041

school suspension cases"); *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) ("The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings."); *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir. 1961) ("This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required.").[20]

Appellant's argument is novel and goes beyond due process requirements. He capitalizes on the generous give in the district court's errant reasonable care standard to argue that Minnesota common law requires private colleges and universities to allow "some form of cross-examination" to students accused of misconduct.[21] Due Process doesn't impose this requirement on public colleges and universities, and Minnesota law doesn't impose it on private institutions either.[22]

---

[20]  Over a dissent, the Sixth Circuit recently held that "if a [public] university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). Even that limited holding is an outlier.

[21]  Appellant's argument is yet more evidence of the district court's error and the potential unintended consequences of a reasonable care standard. Where constitutional due process and its requirements are anchored to the text of the Constitution and the "minimal" requirements of notice and hearing, the district court's reasonable care standard has no such limiting principle and therefore has the potential to require *more* from private colleges and universities than due process requires from public ones.

[22]  Because Minnesota courts have held that "there is no [due process] requirement that the student be allowed to examine or present witnesses," *Zellman ex rel. MZ v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216, 221 (Minn. Ct. App. 1999) (citing *Goss*, 419 U.S. at 581-82), it is implausible that Minnesota courts would hold that cross-examination is required under the common law.

**B.** **Requiring cross-examination is impractical and poses collateral consequences.**

Reading a cross-examination requirement into the common-law duty recognized in *Abbariao* and reiterated in *Rollins* means that private colleges and universities would be required to allow cross-examination in all types of student disciplinary matters, not just sexual misconduct cases. This would fundamentally change student discipline from a pedagogical tool into an adversarial wedge. *See Goss*, 419 U.S. at 583 (striving to protect student discipline as "part of the teaching process").

MPCC members conduct their student disciplinary processes to serve their educational missions—including providing equal access to educational opportunities for all students. Institutions already strive to treat all students involved in a misconduct matter fairly and have policies and procedures designed to do just that. This includes procedures for students to review and raise questions regarding information provided by other students. *E.g.* St. Benedict/St. John's – Sexual Misconduct Complaint Procedures ("complainant and respondent . . . may suggest questions that they would like asked of the other party");[23] Gustavus – Sexual Misconduct & Sexual Harassment Policy ("The parties will have five (5) business days from the date of notice to review the Investigative Report and submit their

---

[23] https://www.csbsju.edu/human-rights/sexual-misconduct/sexual-misconduct-complaint-procedures (last visited July 12, 2019)

Appellate Case: 19-1594    Page: 27    Date Filed: 07/15/2019 Entry ID: 4808041

response . . . [and] the investigator may request additional time [for further review]");[24] Macalester – Sexual Misconduct Policy ("complainant and respondent are entitled to . . . suggest possible topics to be covered with witnesses during the formal process . . . .").[25]

But cross-examination can hinder rather than advance the purposes of student discipline by making it adversarial instead of educational. A college or university is "not a court of law, and it is neither practical nor desirable it be one." *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 16 (D. Me. 2005). Yet, formalizing student discipline with trial-like procedures blurs that distinction. It pits pupil against teacher and student against student.

One consequence that MPCC members are specifically concerned will result from this excessively adversarial posture is that fewer and fewer faculty and staff will serve in the disciplinary process. It should come as no surprise that faculty and staff are not eager to participate in or oversee cross-examination of students, especially where they may have those same students in their classrooms, programs, or offices in the future. Requiring cross-examination would do away with the informal and context-specific way that countless student disciplinary matters are resolved, which are

---

[24]    https://gustavus.edu/deanofstudents/policies/gustieguide/sexualmisconduct.php (last visited July 12, 2019)

[25]    https://www.macalester.edu/titleix/sexualmisconductpolicy/ (last visited July 12, 2019)

Appellate Case: 19-1594    Page: 28    Date Filed: 07/15/2019 Entry ID: 4808041

conducive to educator involvement because they are designed to help young adults acknowledge their behavior and learn from it.

Another consequence of cross-examination is the chilling of reports of misconduct—particularly sexual misconduct. MPCC members recognize the trauma associated with sexual assault and are troubled that they could be required to force individuals to confront one another face-to-face in a non-courtroom setting, which MPCC members fear will cause lasting damage to both parties. Members also believe that if direct cross-examination is required, fewer students will come forward to report sexual misconduct violations. Courts too have recognized that students will be reluctant to report misconduct if they are faced with the prospect of cross-examination. *See, e.g., Newsome*, 842 F.2d at 925; *Caston v. Benton Pub. Sch.*, No. 4:00 CV 00215 WKU, 2002 WL 562638, at *5 (E.D. Ark. Apr. 11, 2002). Courts should be careful to protect against this legitimate concern.

Finally, bringing courtroom procedures onto college campuses imposes unrealistic administrative burdens and expectations on university officials. *See Goss*, 419 U.S. at 583 (expressing concern that "formalizing the suspension process and escalating its formality and adversary nature may . . . make it too costly as a regular disciplinary tool"); *Dixon*, 294 F.2d at 159 (not requiring "the right to cross-examine witnesses" because it "might be . . . impractical to carry out").[26] "The cost of

---

[26] In the prison context, the Supreme Court observed that if "confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed

23

judicializing disciplinary proceedings . . . is nontrivial." *Osteen*, 13 F.3d at 226.

University officials are not judicial officers, nor are they expected to be legally trained.

"To saddle them with the burden of overseeing the process of cross-examination (and

the innumerable objections that are raised to the form and content of cross-

examination) is to require of them that which they are ill-equipped to perform."

*Newsome,* 842 F.2d at 926.

## CONCLUSION

WHEREFORE, Minnesota Private College Council respectfully requests that

this Court reinstate arbitrariness as the standard governing disciplinary decisions of

private colleges and universities.

Dated: July 12, 2019                        FAEGRE BAKER DANIELS LLP

*/s/ Sean R. Somermeyer*
Sean R. Somermeyer
Joshua N. Turner
FAEGRE BAKER DANIELS LLP
90 S. 7th Street, Suite 2200
Minneapolis, Minnesota 55402
T: (612) 766-7000
Sean.Somermeyer@FaegreBD.com
Josh.Turner@FaegreBD.com

*Counsel for Minnesota Private College Council*

---

as a matter of course, . . . [p]roceedings would inevitably be longer and tend to
unmanageability." *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976). The same concern is
present in schools.

Appellate Case: 19-1594     Page: 30     Date Filed: 07/15/2019 Entry ID: 4808041

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B)(ii) because the brief is 5,565 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, in 14-point Garamond.

Pursuant to Local Rule 28A(h)(2), I certify that the Brief has been scanned for viruses and is virus-free.

/s/ Sean R. Somermeyer
Counsel for Minnesota Private College Council

25

## CERTIFICATE OF SERVICE

I certify that on July 12, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

.

*/s/ Sean R. Somermeyer*
*Counsel for Minnesota Private College Council*