# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

*JOHN DOE, APPELLANT*
*v.*
*UNIV. OF ST. THOMAS, APPELLEE*

_____

Appeal from the United States District Court of Minnesota
Case No: 16-cv-1127 (JRT/DTS)

_____

## REPLY BRIEF OF APPELLANT JOHN DOE TO MINNESOTA
## PRIVATE COLLEGE COUNSEL AMICUS BRIEF

_____

For Appellant John Doe:

Beau D. McGraw (31190X)
McGraw Law Firm, P.A.
10390 39th St. North, Suite 3
Lake Elmo, MN 55042
651.209.3200 phone
beau@mcgrawlawfirm.com


Eric J. Rosenberg (0069958)
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
740.644.1027 phone
erosenberg@rosenbergball.com

Appellate Case: 19-1594     Page: 1     Date Filed: 07/30/2019 Entry ID: 4813646

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

ARGUMENT ............................................................................................... 6

    I.    Introduction ................................................................................ 6

    II.    The MPCC Amicus Inappropriately Recycles UST's Arguments. ... 9

    III.    The District Court's Negligence Duty Cannot Be Reversed Because UST Filed No Cross-Appeal. ................................................................. 11

    IV.    The Negligence Duty Is Firmly Grounded In *Abbariao*. ................. 12

    V.    The Negligence Duty Contemplates Universities Providing Cross-Examination Rights in Sexual Misconduct Disciplinary Proceedings Involving Credibility Issues. ..................................................................... 15

    VI.    MPCC Provides No Legal Or Factual Basis For Reversing The Negligence Duty. ....................................................................................... 21

    VII.    MPCC's Academic Freedom Arguments Lack Merit. ................. 30

CONCLUSION ............................................................................................ 32

Appellate Case: 19-1594    Page: 2    Date Filed: 07/30/2019 Entry ID: 4813646

# TABLE OF AUTHORITIES

## CASES

*Abbariao v. Hamline University School of Law*, 258 N.W.2d 108 (Minn. 1977)7, 12

*Action Tapes, Inc. v. Mattson*, 462 F.3d 1010 (8th Cir. 2006) ........................... 24

*Alsides v. Brown Inst., Ltd.,* 592 N.W.2d 468 (Minn. Ct. App. 1999) ......... 25, 26

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ............................................. 6, 21, 22

*Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78 (1978)... 8, 14, 20, 21

*Blum v. Bacon*, 457 U.S. 132 (1982) ................................................................ 11

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)17

*Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260 (5th Cir. 1985) .. 20, 21

*California v. Green*, 399 U.S. 149 (1970) ............................................................ 8

*Caston v. Benton Pub. Sch.,* 2002 WL 562638 (E.D. Ark. Apr. 11, 2002).. 21, 23

*Corso v. Creighton Univ.*, 731 F.2d 529 (8th Cir. 1984).................................... 25

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) ................................................................................................... 21

*Dixon v. Ala. State Bd. of Educ.,* 294 F.2d 150 (5th Cir. 1961) .................. 20, 21

*Doe v. Allee,* 2019 Cal. App. LEXIS 8 (Cal. App. 2d Dist. January 4, 2019)... 15, 18

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)....................................... passim

*Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016) ........................... 20

*Doe v. Claremont McKenna College,* 25 Cal.App.5th 1055 (2018).................. 19

*Doe v. Miami Univ.* 882 F.3d 579 (6th Cir. 2018)............................................. 19

*Doe v. Penn. St. Univ.,* No.17-cv-1315, 2017 WL 3581672 (M.D.Pa. Aug. 18, 2017)................................................................................................. 15, 19

*Doe v. Purdue Univ.,* 2019 WL 2707502 (7th Cir. Ind. June 28, 2019)....... 13, 24

*Doe v. Rhodes College,* No.2:19-cv-2336-JTF (W.D. Tenn. June 14, 2019)..... 19

*Doe v. The Penn. State Univ.* No. 4:18-cv-164, Docket 27 (M.D. Pa. Aug. 21, 2018)................................................................................................. 14, 19

*Doe v. The Regents of The Univ. of Cali.,* 28 Cal.App.5th 44 (2018) ............... 15

*Doe v. Univ. of Southern Mississippi,* No.2:18-cv-153 (S.D. Miss., Sept. 26, 2018)....................................................................................................... 15

*Doe v. Univ. of Cinci.* 872 F.3d 393 (6th Cir. 2017) .................................. 14, 22

*Doe v. Univ. of Mich.,* No.2:18-cv-11776-AJT-EAS, Docket 30 (E.D.S.D. Mich. July 6, 2018)......................................................................................... 15, 19

*Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597 (S.D. Miss. January 16, 2019) 13, 15, 18

*Doe v. University of Southern California,* 28 Cal.App.5th 26 (2018)............... 15

Appellate Case: 19-1594    Page: 3    Date Filed: 07/30/2019 Entry ID: 4813646

*Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005)......................... 13, 14

*Freeman v. Busch*, 349 F.3d 582 (8th Cir. 2003) ............................................... 25

*Frost v. Univ. of Louisville* 2019 WL 2288453 (W.D. Ky. May 29, 2019) 15, 18, 19

*Gillis v. Principia Corp.*, 832 F.3d 865 (8th Cir. 2016) ............................... 20, 21

*Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6 (D. Me. 2005)................ 21, 22

*Gorman v. Univ. of Rhode Island*, 837 F.2d 7 (1st Cir. 1988) ......... 14, 20, 21, 22

*Goss v. Lopez*, 419 U.S. 565 (1975) ............................................................ passim

*Jindra v. City of St. Anthony*, 533 N.W.2d 641 (Minn. Ct. App. 1995) ............. 27

*Keefe v. Adams*, 840 F.3d 523, 535 (8th Cir. 2016).............................................. 9

*Lee v. Univ. of New Mexico*, No.1:17-cv-01230 (D. N.M. Sept. 20, 2018) ....... 15

*Magee v. Trustees of Hamline Univ.*, Minn., 747 F.3d 532 (8th Cir. 2014)....... 17

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ___, 139 S.Ct. 1921 (2019) ........................................................................................................... 17

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .................................................... 8, 14

*N.S. by & through J.S. v. Tennessee Dep't of Educ.*, 2017 WL 1347753 (M.D. Tenn. Apr. 12, 2017) .................................................................................. 5, 27

*Nash v. Auburn Univ.*, 812 F.2d 655 (11th Cir. 1987) ........................... 20, 21, 22

*Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920 (6th Cir. 1988) ........... 20, 21

*Nokes v. Miami Univ.*, 2017 WL 3674910 (S.D. Oh. Aug. 25, 2017)................ 15

*Norris v. Univ. of Colorado*, 2019 WL 764568 (D. Co. Feb. 21, 2019) ...... 15, 18

*O.R.S. Distilling Co. v. Brown–Forman Corp.*, 972 F.2d 924 (8th Cir. 1992)... 25

*Oliver v. Univ. of Tx. Southwestern Med. Sch.*, NO. 3:18-CV-1549-B 2019 WL 536376 (N.D. Tx. Feb. 11, 2019) ................................................................ 14

*Osteen v. Henley*, 13 F.3d 221 (7th Cir. 1993) ................................. 20, 21, 23, 29

*Ponticas v. K.M.S. Investments*, 331 N.W.2d 907 (Minn. 1983)....................... 27

*Powell v. Montana State Univ.*, 2018 WL 6728061 (D. Mt. Dec. 21, 2018) ..... 14

*Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214 (1985)........................... 14

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) .................................................... 17

*Roe v. Javaune Adams-Gaston*, Case No. 17-cv-945-EAS-CMV (S.D. Oh. April 17, 2018)................................................................................................... 15, 19

*Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464 (Minn. App. 2001) ............ 26

*Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062 (7th Cir. 1997)...... 9

*Schaer v. Brandeis Univ.*, 735 N.E.2d 373 (2000) ............................................ 17

*Smock v. Bd. of Regents of the Univ. of Mich.* 353 F.Supp.3d 651 (E.D. Mich. 2018)......................................................................................................... 15, 18

*Spirtas Co. v. Nautilus Ins.*, 715 F.3d 667 (8th Cir. 2013) ................................ 11

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ..... 20, 21, 23

*Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972)................................. 20, 21, 22

*Zellman ex rel. MZ v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216 (Minn. Ct. App. 1999)................................................................................................ 21, 22

iv

Appellate Case: 19-1594     Page: 4     Date Filed: 07/30/2019 Entry ID: 4813646

## OTHER AUTHORITIES

J. Peter Byrne, "Academic Freedom: A 'Special Concern of the First Amendment'," 99 Yale L.J. 251 (1989).                                                 31

Kristin Jones, *Lax Enforcement of Title IX in Campus Sexual Assault Cases,* CENTER FOR PUBLIC INTEGRITY, Feb. 25, 2010                                 6

Raychel Lean, *"Kangaroo Court": Lawyers Weigh in on Betsy DeVos' Proposed Title IX Policies for Handling Sexual Misconduct on Campus,* Nat'l Law J. (Sept. 12, 2018)                                  7

v

## **ARGUMENT**

## I.    **Introduction.**

Minnesota Private College Council ("MPCC") alleges the District Court incorrectly believed universities' decisions to label students as sex offenders causes "significant and permanent" adverse consequences. *MCPP-Amicus,* p.6. According to MPCC, such labeling is really "a valuable educational device" that is "part of the teaching process." *Id.,* p.14. (citing *Goss v. Lopez*, 419 U.S. 565 (1975)). In rejecting MPCC's argument, and siding with the District Court, the Sixth Circuit noted:

> Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct . . . *Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. The student may be forced to withdraw from his classes and move out of his university housing. His personal relationships might suffer. And he could face difficulty obtaining educational and employment opportunities down the road, especially if he is expelled. Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018).

Instead of acknowledging the systemic harm MPCC's members inflict by labeling students sex offenders, MPCC claims sexual misconduct disciplinary proceedings – one of the most serious matters universities address – are akin to a court decision involving autistic K-12 students that require physical restraints in the classroom. *MPCC-Amicus,* p.14 (discussing *N.S. by & through J.S. v. Tennessee Dep't of Educ*., No. 3:16-CV-0610, 2017 WL 1347753 (M.D. Tenn. Apr. 12, 2017).

Appellate Case: 19-1594    Page: 6    Date Filed: 07/30/2019 Entry ID: 4813646

MPPC also builds its arguments for denying students common-sense due process rights on a Supreme Court decision that addressed disciplinary proceedings in prisons which limited – but did not eliminate – inmates' ability to engage in cross-examination. *Id.,* p.23-24 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976)).

The record of the last eight years helps explain how MPCC could be so indifferent to the rights of accused college students facing life-altering allegations. In 2011, the federal government adopted new Title IX standards that gave colleges the choice of losing federal funding or implementing procedures making it far more likely students accused of sexual assault would be found guilty. *Letter from Russlynn Ali, Assistant Sec'y, Office for Civil Rights, U.S. Dep't of Educ., to Colleague* (Apr. 4, 2011), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf (last accessed July 25, 2019). Campus activists, faculty, and the media intensified the pressure for one-sided procedures. *See, e.g.*, Kristin Jones, *Lax Enforcement of Title IX in Campus Sexual Assault Cases,* CENTER FOR PUBLIC INTEGRITY, Feb. 25, 2010, https://www.publicintegrity.org/2010/02/25/4374/lax-enforcement-title-ix-campus-sexual-assault-cases-0 (last accessed July 25, 2019).

John does not deny that many schools acted at least in part from good intentions—hoping to increase reporting and eliminate the scourge of sexual assault. But too often the result has been a "kangaroo court," which all but presumes the guilt

7

of accused students while simultaneously hampering their efforts to defend themselves. Raychel Lean, *"Kangaroo Court": Lawyers Weigh in on Betsy DeVos' Proposed Title IX Policies for Handling Sexual Misconduct on Campus,* Nat'l Law J. (Sept. 12, 2018).

In an ideal world, institutions like MPCC would seek equity for all students by redesigning disciplinary procedures to prioritize fairness and truth-seeking. Instead, as discussed below, MPCC doubles down on polices that are biased in favor of students who accuse other students of sexual misconduct ("Accuser-Favored Bias"). MPCC does so in the hopes this Court will bless the dubious procedures MPCC members use to unfairly brand accused students as sex offenders.

While this background might help *explain* the arguments offered by MPCC, this Court should unequivocally *reject* those arguments. For instance, MPCC opens with a request that this Court, unlike the District Court, ignore the plain language of *Abbariao*, which held that "[t]he requirements imposed by the common law on private universities parallel those imposed by the due process clause on public universities." *Infra §4* (debunking MPCC's arguments regarding *Abbariao v. Hamline University School of Law*, 258 N.W.2d 108).

MPCC then offers a blinkered view of academic freedom. It implies that, on matters related to sexual misconduct, campus-related guidance from the Obama administration or the Minnesota legislature did *not* violate academic freedom but

8

regulations on the same issue from the Trump administration, or adverse court rulings, *would* violate their academic freedom rights. *Infra,* §7 (discussing same).

Next, MPCC predicts that a parade of horribles would come from applying the *Abbariao* standard. *Infra,* p.22 (discussing same). But this concern ignores a decades-long tradition in the federal judiciary of recognizing more limited due process rights in academic matters. *See e.g., Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78 (1978). Regarding non-academic offenses, the federal judiciary has applied a three-part test to minimize the level of process due in trivial allegations, reserving more robust procedures only for the most serious offenses colleges handle. *See e.g., Mathews v. Eldridge*, 424 U.S. 319 (1976).

MPCC concludes by condemning the value of cross-examination, which the Supreme Court has described as "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970) (quoting John Henry Wigmore). *Infra,* §5 (discussing same). To see such an argument coming from colleges whose primary mission is the pursuit of truth is extraordinary.

## II.   The MPCC Amicus Inappropriately Recycles UST's Arguments.

John's brief detailed why reasonable jurors would likely find Appellee's Title IX training materials caused the University of St. Thomas ("UST") to manifest (a) Accuser-Favored Bias; and (b) bias against accused students like John who are viewed through a "collective guilt" lens. *See generally, John-Br.,* pgs.15-44. *John-*

9

*Reply,* pgs.11-17. John also outlined why jurors would likely find UST's training caused UST to violate the District Court's *Abbariao*-based Negligence Duty[1] in allowing Accuser-Favored Bias to result in John's unlawful suspension. *Id*.

After these issues were fully briefed, MPPC – an organization of which UST is a member[2] – attempted to give UST a second bite at the apple. In addressing this type of conduct, the Seventh Circuit, in *Ryan,* noted:

> The vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. *Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997).

*Ryan* determined an *amicus* brief should only be allowed when: (1) a party is not represented competently by counsel, or not represented at all; (2) the *amicus* has an interest in some other case that may be affected by the decision in the present case; or (3) the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. *Ryan v. Commodity Futures Trading Com'n,* 125 F.3d at 1063.

---

[1] The District Court defined the Negligence Duty as the "obligation to create and administer a process that was *fair and impartial to both parties* . . . and [to] provide some measure of *due process* in the proceeding to ensure that an accurate outcome was achieved . . . [via] '*procedural protections as the particular situation demands*.'" A.41 (citing *Abbariao* 258 N.W.2d at 110-113 (Minn. 1977); *Keefe v. Adams*, 840 F.3d 523, 535 (8th Cir. 2016) and *Mathews*, 424 U.S. at 334)(emphasis added).

[2] *MPCC-Br.,* p.1.

Appellate Case: 19-1594    Page: 10    Date Filed: 07/30/2019 Entry ID: 4813646

MPCC's Amicus, and the facts and law detailed below, prove none of these situations exist.  Therefore, John requests this Court reject MPPC's partisan attempt to improperly interject itself in this case.

## III.  The District Court's Negligence Duty Cannot Be Reversed Because UST Filed No Cross-Appeal.

MPCC's collateral attack of District Court's Negligence Duty test must be rejected because UST did not file a cross-appeal.  *John-Reply,* pgs.21-23 (discussing same).  UST's failure to file a cross-appeal bars the reversal of the Negligence Duty, because UST admitted this reversal would significantly enlarge its rights and irreparably cripple John's rights. *Id.*

MPCC's Amicus magnifies the extensive enlargement of UST's rights if the Negligence Duty were reversed. For instance, MPCC alleges systemic harm will befall members like UST if they cannot deny students the due process protections contemplated in the *Abbariao*-based Negligence Duty. *See e.g., Infra,* §4, p.22 (discussing same). As a result, MPCC simply repeats UST's petition for a green-light to deprive students of the common-sense due process protections that Courts across America are currently requiring. *Compare, Infra,* pgs.10-15 (discussing court decisions requiring private and public universities provide cross-examination and live hearings when allegations of sexual misconduct allegations involve credibility assessments) with *MPCC-Amicus,* pgs.3-24 (seeking termination of Negligence

11

Duty so Minnesota private universities can deny students of due process by refusing to permit cross-examination and live hearings); *UST-Br.,* pgs.48-54 (same).

Similarly, MPCC and UST both claim the District Court's Negligence Duty is the *only* thing stopping them from denying students legal recourse when private universities unlawfully brand these students sex offenders in violation of federal law and university policies. *MPCC-Amicus,* pgs.2-3, 8 (alleging *Abbariao*-based Negligence Duty imposes new requirements on private universities); *UST-Br.,* pgs. pgs.31, 48-54 (same).

Ironically, these admissions unequivocally *disprove* UST's argument that *Blum* and *Spirtas Co.* allow this Court to reverse the Negligence Duty by "affirming" the District Court's decision on "alternative grounds." *UST-Br.,* p.33 (discussing *Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982) *Spirtas Co. v. Nautilus Ins.*, 715 F.3d 667, 670-71 (8th Cir. 2013). MPCC's Amicus highlights one undisputed fact – that MPCC and UST seek to *terminate* the Negligence Duty, not *affirm* it. As a result, this Court should determine UST's failure to file a cross-appeal precludes MPCC's collateral attack of the Negligence Duty.

## IV.    The Negligence Duty Is Firmly Grounded In *Abbariao.*

UST and MPCC claim the Negligence Duty is incompatible with *Abbariao* because *Abbariao*'s only "duty" is that private universities not engage in "arbitrary" conduct. *MCPP's Amicus,* pgs. 7, 8-11; *UST-Br.,* p.31-32. *Abbariao*'s discussion of

12

additional procedural safeguards for accused students was, MPCC contends, mere "dicta" that should be ignored. *MPCC-Amicus,* p.7.

MPCC's argument completely lacks credibility. In the very sentence noting the prohibition on "arbitrary" conduct, *Abbariao* favorably cited "one theoretical basis for the [common-law] duty, analogizing a university to a private association which at common law could not expel a member *if its action lacked procedural safeguards*." *Abbariao*, 258 N.W.2d at 113 n.3 (emphasis added)(citations omitted).

The *Abbariao* court then discussed these duties with more specificity. It held that "*[t]he requirements imposed by the common law on private universities parallel those imposed by the due process clause on public universities*." *Id* (emphasis added).

Finally, and critically, *Abbariao* clearly distinguished between different types of disciplinary offenses, and the differing "parallel" duties that each type of offense would impose:

> Courts have invoked different protections for disciplinary and academic expulsions. *Expulsion for misconduct triggers a panoply of safeguards designed to ensure the fairness of factfinding by the university* . . . But when a student is expelled for academic deficiencies, these protections are less appropriate. An adjudicative hearing will not determine whether a student's educational performance was unsatisfactory. That issue would be resolved only by regarding the student's examinations, which is a professor's and not a judge's function. *Nevertheless, if a student's expulsion results from the arbitrary, capricious, or bad-faith actions of university officials, the judiciary will intervene and direct the university to treat the student fairly.*" *Id.,* 112. (emphasis added) (citations omitted).

The District Court's Negligence Duty is completely consistent with *Abbariao's* abovementioned mandates regarding the due process duties owed to students at private universities.

MPCC implicitly concedes as much. Its brief admits that *Abbariao* imposed certain duties on private universities to provide students "due process" rights. *MPCC-Amicus,* pgs.7, 10. MPCC also acknowledges that these duties are "flexible," with "more serious disciplinary consequences merit[ing] more procedural protections." *MPCC-Amicus,* p.9 (quoting *Goss* 419 U.S. 565; *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005).

As detailed below, and in John's Brief, courts have flexibly applied this standard, depending on the severity of the offense. In alleged sexual misconduct disciplinary proceedings, federal courts have routinely determined that universities owe students the following duties: (a) access to exculpatory evidence (*Doe v. Purdue Univ.,* No.17-3565, --F.3d--, 2019 WL 2707502, *23 (7th Cir. Ind. June 28, 2019)); (b) live hearings with cross-examination when credibility issues arise (*Baum*, 903 F.3d at 578); and (c) proceedings free from Accuser-Favored Bias (*Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 602 (S.D. Miss. January 16, 2019)).

Consequently, this Court should reject MPCC's false claim that the Negligence Duty improperly "conflated *requirements* under due process with *duty* under common law." *Id.,* p.8 (emphasis in original).

14

**V.** **The Negligence Duty Contemplates Universities Providing Cross-Examination Rights in Sexual Misconduct Disciplinary Proceedings Involving Credibility Issues.**

Contrary to MPCC's claim, the *Mathews, Goss, Gorman, Flaim, Horowitz,* and *Ewing* decisions do *not* suggest universities have no duty to provide cross-examination in sexual misconduct disciplinary proceedings involving credibility issues. *MPCC-Amicus,* pgs.8-11, 15 (discussing *Mathews* 424 U.S. 319; *Goss,* 419 U.S. 565; *Gorman v. Univ. of Rhode Island,* 837 F.2d 7 (1st Cir. 1988); *Flaim,* 418 F.3d 629; *Horowitz,* 435 U.S. 78; *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214 (1985)).

This argument fails in part because *eighteen* courts determined that requiring cross-examination in sexual misconduct disciplinary proceedings is compatible with *Mathews, Goss, Gorman, Flaim, Horowitz,* and/or *Ewing. See, Doe v. Univ. of Cinci.* 872 F.3d 393 (6th Cir. 2017) (discussing *Mathews, Flaim,* and *Horowitz*); *Baum,* 903 F.3d 575 (addressing *Mathews, Goss, Gorman,* and *Flaim*); *Powell v. Montana State Univ.,* No. CV 17-15, 2018 WL 6728061, *7 (D. Mt. Dec. 21, 2018)(same); *Oliver v. Univ. of Tx. Southwestern Med. Sch.,* NO. 3:18-CV-1549-B, 2019 WL 536376, *13 (N.D. Tx. Feb. 11, 2019)(addressing *Mathews, Goss, Gorman, Horowitz, Flaim,* and *Ewing*); *Doe v. The Penn. State Univ.* No. 4:18-cv-164, Docket 27, Page Id.16 of 19, (M.D. Pa. Aug. 21, 2018)(addressing *Mathews, Goss, Gorman,* and *Flaim*); *Doe v. Univ. of Southern Mississippi,* No.2:18-cv-153, Docket 35, p.5-7 (S.D. Miss.,

Sept. 26, 2018)( same); *Doe v. Allee,* 2019 Cal. App. LEXIS 8, (Cal. App. 2d Dist. January 4, 2019) (discussing *Goss* and *Horowitz*); *Doe v. Penn. St. Univ.,* No.17-cv-1315, 2017 WL 3581672, *7-8 (M.D. Pa. Aug. 18, 2017)(addressing *Goss* and *Gorman*); *Norris v. Univ. of Colorado, Boulder,* No. 1:18-cv-02243-LTB, 2019 WL 764568, (D. Co. Feb. 21, 2019)(addressing *Mathews* and *Goss*)*; Doe v. University of Southern California,* 29 Cal.App.5th 1212 (2018)(addressing *Goss*); *Doe v. The Regents of The Univ. of Cali.,* 28 Cal.App.5th 44 (2018)(same); *Nokes v. Miami Univ.,* No. 1:17-cv-482, 2017 WL 3674910, *12 (S.D. Oh. Aug. 25, 2017)(discussing *Flaim*); *Univ. of Mississippi,* 361 F.Supp.3d at 612 (addressing *Mathews*); *Roe v. Javaune Adams-Gaston,* Case No. 17-cv-945-EAS-CMV, Docket 46 (S.D. Oh. April 17, 2018) (discussing *Mathews* and *Flaim*); *Doe v. Univ. of Mich.,* No.2:18-cv-11776-AJT-EAS, Docket 30, (E.D. Mich. July 6, 2018)(same); *Lee v. Univ. of New Mexico,* No.1:17-cv-01230, Doc. 36, p.2-3 (D. N.M. Sept. 20, 2018)(same); *Smock v. Bd. of Regents of the Univ. of Mich.* 353 F.Supp.3d 651, 657 (E.D. Mich. 2018) (addressing *Mathews* in context of disciplinary proceeding involving allegations of sexual misconduct by a faculty member); *Frost v. Univ. of Louisville,* 3:19-CV-227-CRS, 2019 WL 2288453, *10 (W.D. Ky. May 29, 2019) (addressing *Goss* and *Flaim*).

Appellate Case: 19-1594    Page: 16    Date Filed: 07/30/2019 Entry ID: 4813646

Stated another way, these eighteen decisions disprove MPCC's allegation that the Negligence Duty is "untether[ed]"[3] from the roadmap of due process duties owed students under *Mathews, Goss, Gorman, Flaim, Horowitz,* and *Ewing.* This oversight may be why UST and MPCC allege the Negligence Duty's "due process" language runs afoul of *Abbariao. UST-Br.,* pgs.31-32; *MPCC-Amicus,* pgs.3-4, 7-8.

UST and MPCC both admit that *Abbariao* required private universities to provide students with rights parallel to the due process rights provided public university students. *MCPP-Amicus,* p.7; *UST-Br.,* p.32. Consequently, this Court should reject MPCC's unsupported arguments that (a) the District Court "broke from over a century of precedent";[4] (b) Minnesota's private universities are "not governed by constitutional due process;"[5] (c) the Negligence Duty reflects a "sea change" that will trigger "endless litigation" and trample MPCC member's Biblical principles;[6]

---

[3] *MPCC-Amicus,* p.10.

[4] *MCPP-Amicus,* p.3.

[5] *Id.,* p.5.

[6] *Id.,* p.11-12. MPCC's claim that Biblical principles somehow preclude accused students' rights to live hearings and cross-examination lacks merit. *See, e.g., Acts 25:16* ("I answered them that it was not the custom of the Romans to give up anyone before the accused met the accusers face to face and had opportunity to make his defense concerning the charge laid against him."); Isaiah 50:8 ("He who vindicates me is near. Who will contend with me? Let us stand up together. Who is my adversary? Let him come near to me.").

Appellate Case: 19-1594    Page: 17    Date Filed: 07/30/2019 Entry ID: 4813646

and (d) Minnesota's private universities are not "subject to constitutional standards" because they are not "state actors." *MCPP-Amicus,* p.5 (discussing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001); *Magee v. Trustees of Hamline Univ.,* Minn., 747 F.3d 532 (8th Cir. 2014); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982); *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ___, 139 S.Ct. 1921 (2019).[7]

As John's brief observed, Minnesota is hardly the only state with such a requirement. California and Virginia courts determined private schools must afford students with due process protections such as cross-examination in certain circumstances. *Compare, John-Reply,* pgs.24-25 (discussing UST's arguments regarding same); *MPCC-Amicus* (containing no discussion of California and Virginia court decisions cited in John's Brief that address cross-examination). Courts in Massachusetts, meanwhile, have comparably recognized that they must "examine the hearing" afforded to the student "to ensure that it was conducted with basic fairness." *Schaer v. Brandeis Univ.*, 432 Mass. 474, 481, 735 N.E.2d 373 (2000).

---

[7] MPCC's "state actor" argument fails because John did not base his claim on allegations that UST was a "state actor" like the plaintiffs in cases cited by MPCC. *Brentwood Acad.* 531 U.S. 288 (dismissing §1983 claim where plaintiff alleged private party was a "state actor"); *Magee*, 747 F.3d 532 (same); *Rendell-Baker,* 457 U.S. 830 (same); *Halleck*, 139 S.Ct. 1921(same).

Appellate Case: 19-1594     Page: 18     Date Filed: 07/30/2019 Entry ID: 4813646

Instead of addressing these decisions, UST and MPCC attempt to minimize court decisions requiring cross-examination in sexual misconduct disciplinary proceedings. In so doing, they completely ignore the fact that UST and most, if not all MPCC schools, do not even require a live hearing at all. *UST-Br.,* pgs.49-54, *MPCC-Amicus*, pgs.18-24. For example, MPCC alleges the Sixth Circuit's *Baum* decision requiring cross-examination in university sexual misconduct disciplinary proceedings is an "outlier." *MPCC-Amicus,* p.20.

*Baum* is no "outlier." <u>*Fifteen*</u> state and federal courts from multiple circuits have cited *Baum* - or its Sixth Circuit predecessor *University of Cincinnati* - as a basis for requiring cross-examination in university sexual misconduct disciplinary proceedings. *Norris v. Univ. of Colorado,* 2019 WL 764568, *15 (D. Co. Feb. 21, 2019)(citing *Baum* as basis for requiring cross-examination); *Smock v. Univ. of Michigan,* 353 F.Supp.3d at 657 (same); *Univ. of Southern Mississippi,* No.2:18-cv-153, Docket 35, p.6 (S.D. Miss., Sept. 26, 2018)(same); *Doe v. Allee,* 2019 Cal. App. LEXIS 8, *55, 56, 60 (citing *Baum* and *Univ. of Cinci.* as basis for requiring cross-examination); *Powell v. Mont. St. Univ.,* 2018 WL 6728061, *7 (same); *Doe v. Univ. of Mississippi,* 361 F.Supp.3d at 612 (same); *Nokes v. Univ. of Miami,* 2017 WL 3674910, *12 (same); *Doe v. N. Mich. Univ.,* No. 2:18-CV-196, 2019 WL 2269721, *6 (W.D.Mi. May 28, 2019)(same); *Frost v. Univ. of Louisville*, 2019 WL 2288453, *12; *Doe v. Rhodes College,* No.2:19-cv-2336-JTF, Docket 33,

PageId.256 (W.D. Tenn. June 14, 2019)(same); *Doe v. Claremont McKenna College,* 25 Cal.App.5th 1055, 665 (2018) (citing *Doe v. Univ. of Cinci.* as basis for requiring cross-examination);. *Doe v. Penn. St. Univ.,* 2017 WL 3581672, *7 (same); *Doe v. The Penn. State Univ.* No. 4:18-cv-164, Docket 27, Page Id.16 of 19, (M.D. Pa. Aug. 21, 2018)(same); *Roe v. Javaune Adams-Gaston,* Case No. 17-cv-945-EAS-CMV, Docket 46, PageId.1083-84 (S.D. Oh. April 17, 2018) (same); *Doe v. Univ. of Mich.,* No.2:18-cv-11776-AJT-EAS, Docket 30, PageId.737-78 (E.D. Mich. July 6, 2018)(same).

In fact, John's Brief identified *twenty* decisions that determined universities owe students a due process duty to allow cross-examination in sexual misconduct disciplinary proceedings at public and private universities. *John-Br.,* pgs.46-50.[8]

Paralleling the more general interpretations of federal courts, John never suggested this due process right extended beyond sexual misconduct disciplinary proceedings whose outcome depended on the parties' credibility. Hence, this Court should reject two unfounded arguments in MPCC's Amicus: (1) that the Negligence Duty requires universities "allow cross-examination in all types of student

---

[8] It should be noted that John's brief identified *Doe v. Miami Univ.* 882 F.3d 579 (6th Cir. 2018) as one of twenty-one cases addressing cross-examination. *Miami Univ.* decision did not address cross-examination. John's counsel apologizes for this oversight. But, since John filed his brief, at least two additional district courts required cross-examination in sexual misconduct disciplinary proceedings. *See, Frost,* 2019 WL 2288453, *12; *Rhodes College,* No.2:19-cv-2336-JTF, Docket 33, (W.D. Tenn. June 14, 2019).

Appellate Case: 19-1594     Page: 20     Date Filed: 07/30/2019 Entry ID: 4813646

disciplinary matters"; and (2) the only due process duties courts imposed on universities are the "'minimal' requirements of notice and hearing." *MPCC-Amicus,* p.20, fn.21.

Instead, John requests this Court find the aforementioned court decisions prove UST violated the *Abbariao*-based Negligence Duty by not affording John a live hearing with cross-examination.

## VI. MPCC Provides No Legal Or Factual Basis For Reversing The Negligence Duty.

The errors in MPCC's arguments are highlighted in its erroneous claim that the following decisions suggest MPCC's members have no duty to provide students due process protections contemplated in the *Abbariao*-based Negligence Duty: *Brandeis, Tinker, Gillis, Goss, Gorman, Horowitz, Osteen, Newsome, Nash, Brewer, Winnick, Dixon, Zellman, Gomes, Caston, Davis,* and *Baxter. MPCC-Amicus,* pgs.14-15; 17, 19-24 (discussing *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503 (1969); *Gillis v. Principia Corp.,* 832 F.3d 865 (8th Cir. 2016); *Goss,* 419 U.S. 565; *Gorman* 837 F.2d 7; *Horowitz,* 435 U.S. 78; *Osteen v. Henley,* 13 F.3d 221 (7th Cir. 1993); *Newsome v. Batavia Local Sch. Dist.,* 842 F.2d 920 (6th Cir. 1988); *Nash v. Auburn Univ.,* 812 F.2d 655 (11th Cir. 1987); *Brewer by Dreyfus v. Austin Indep. Sch. Dist.,* 779 F.2d 260 (5th Cir. 1985); *Winnick v. Manning,* 460 F.2d 545 (2d Cir. 1972); *Dixon v. Ala. State Bd. of Educ.,* 294 F.2d 150 (5th Cir. 1961); *Zellman ex rel. MZ*

Appellate Case: 19-1594    Page: 21    Date Filed: 07/30/2019 Entry ID: 4813646

*v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216 (Minn. Ct. App. 1999); *Gomes v. Univ. of Maine Sys.,* 365 F. Supp. 2d 6 (D. Me. 2005); *Caston v. Benton Pub. Sch.,* No. 4:00-cv-00215, 2002 WL 562638 (E.D. Ark. Apr. 11, 2002); *Baxter,* 425 U.S. 308; *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)).

Multiple reasons exist for rejecting MPCC's arguments. For instance, *Brandeis* found a university violated its duty to a plaintiff/student accused of sexual misconduct by prohibiting him from cross-examining witnesses in a university disciplinary proceeding. 177 F. Supp. 3d at 605. Moreover, <u>*fourteen*</u> of the decisions cited by MPCC are distinguishable because they do <u>*not*</u> address the merits of cross-examination in university sexual misconduct disciplinary proceedings. *Tinker,* 393 U.S. 503 (1969); *Horowitz*, 435 U.S. 78; *Osteen* 13 F.3d 221; *Newsome,* 842 F.2d 920; *Gorman,* 837 F.2d 7; *Nash,* 812 F.2d 655; *Brewer by Dreyfus,* 779 F.2d 260; *Winnick,* 460 F.2d 545; *Dixon,* 294 F.2d 150; *Zellman,* 594 N.W.2d 216; *Goss,* 419 U.S. 565; *Baxter,* 425 U.S. 308 (1976); *Gillis,* 832 F.3d 865; *Davis,* 526 U.S. 629.

Similarly, numerous courts determined that requiring universities to provide live hearings and/or cross-examination in the context of sexual misconduct cases is perfectly compatible with *Goss, Gorman,* and/or *Horowitz. Supra,* pgs.10-15 (discussing same). MPCC also incorrectly alleges *Newsome* and *Univ. of Cinci.* support its argument that students are not entitled to due process protections such as

Appellate Case: 19-1594     Page: 22     Date Filed: 07/30/2019 Entry ID: 4813646

cross-examination. *MPCC-Amicus,* pgs.18-19, 23. This is incorrect. *Newsome* was cited by *Univ. of Cinci.* as a basis for <u>*requiring*</u> cross-examination in sexual misconduct disciplinary proceedings when credibility was at issue. *Univ. of Cinci,* 872 F.3d at 404-05.

Additionally, the decisions cited by MPCC involve issues not before this Court. *Gorman* and *Gomes* rejected cross-examination arguments because the student/plaintiffs were permitted to cross-examine their accusers. *Gorman.* 837 F.2d. at 16; *Gomes.* 365 F. Supp. 2d. at 23. *Baxter* addressed disciplinary proceedings in prisons which limited – but did not eliminate – inmates' ability to engage in cross-examination. 425 U.S. at 338. In *Winnick,* the court determined cross-examination was unnecessary because the plaintiff admitted engaging in the conduct and cross-examination was therefore a "fruitless exercise." 460 F.2d at 550.

*Nash* and *Zellman* addressed academic dishonesty disciplinary actions that did not involve credibility issues like those in many "he said she said" sexual assault allegations. *Nash* 812 F.2d 655; *Zellman* 594 N.W.2d at 218-19. Unlike the no-hearing disciplinary proceedings conducted by UST and other MPCC members,[9] *Caston's* plaintiff (a high school student) could "raise credibility issues" related to

---

[9] *See e.g., MPCC-Amicus,* pgs.13-14 (discussing St. Olaf and St. Scholastica's no-hearing, single adjudicator disciplinary proceedings).

Appellate Case: 19-1594     Page: 23     Date Filed: 07/30/2019 Entry ID: 4813646

adverse witness testimony presented at his live disciplinary hearing. *Caston,* 2002 WL 562638, *5.

*Tinker* determined a school's prohibition against students wearing black armbands in protest of the Vietnam war was an unconstitutional denial of students' rights of expression. 393 U.S. 503 (1969). *Osteen* addressed whether a student had a right to have an *attorney* "participate in the [disciplinary] proceeding in the usual way of trial counsel, as by examining and cross-examining witnesses and addressing the tribunal." 13 F.3d at 225. *Osteen* did not address whether a student could personally engage in cross-examination. *Id.*

Simply put, these decisions disprove MPCC's claim that the *Abbariao*-based Negligence Duty will trigger a "wave of litigation" by students charged with trivial misconduct such as "graffiti." *MPCC-Amicus,* pgs.3, 16. In truth, the District Court merely joined a long line of state and federal courts that distinguish sexual misconduct disciplinary proceedings from those involving (a) high school students (*Tinker, Brewer, Zellman*); (b) students facing short suspensions (*Goss*); (c) allegations of *academic* dishonesty (*Horowitz, Nash*); and/or (d) situations where students admit guilt (*Flaim, Winnick*). *Supra,* pgs.10-16 (discussing same).

Consequently, this Court should reject MPCC's unfounded "wave of litigation" argument and determine the Negligence Duty is perfectly compatible with Seventh and Sixth Circuit decisions requiring students charged with sexual

misconduct be afforded greater due process protections than students charged with minor offenses. *See e.g., Doe v. Purdue Univ.,* --F.3d--, 2019 WL 2707502, *21, *Baum*, 903 F.3d at 582.

MPCC's eight backup arguments fare no better. First, MPCC alleges due process duties are unnecessary because its "members" – including UST – are trained to "treat all students in a misconduct [proceeding] fairly. . . ." *MPCC-Amicus,* p.21. Jurors reviewing UST's Accuser-Favored Bias would likely disagree. *See generally, John-Br.,* pgs.15-44. *John-Reply,* pgs.11-17. Moreover, accepting MPCC's argument on this point would shield colleges from any liability in campus sexual assault proceedings.

Second, MPCC repeats UST's claim that John waived his right to assert a cross-examination duty. *MPCC-Amicus*, p.18 *UST-Br.,* pgs.48-49. But John referenced UST's lack of live hearings and cross-examination as examples of per-se violations of the Negligence Duty. Since John did not waive the claim, MPCC incorrectly relies on *Action Tapes.*[10] *See, Action Tapes,* 462 F.3d at 1014 (prohibiting arguments which: (a) contradicted a party's summary judgment hearing testimony, and (b) lacked "evidentiary support in the record for [party's] assertion . . . .").

---

[10] *MPCC-Amicus,* p.18 (discussing *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010 (8th Cir. 2006).

Appellate Case: 19-1594     Page: 25     Date Filed: 07/30/2019 Entry ID: 4813646

Instead, the cross-examination issues before this Court are akin to arguments raised in the *O.R.S.* decision cited by MPCC. *MPCC-Amicus,* p.18 (discussing *O.R.S. Distilling Co. v. Brown–Forman Corp.*, 972 F.2d 924 (8th Cir. 1992). *O.R.S.* prohibited an appellant from raising an argument "fundamentally different than [those] presented to the district court" - *while on the other hand* rejecting appellee's "waiver" claims regarding a different argument because it was a *subset* of arguments presented to the district court. *O.R.S.* 972 F.2d at 926 fn.1, 3. Under the standard articulated in *O.R.S.*, John's cross-examination claims were not waived because they are a subset of his evidence establishing UST's breach of the Negligence Duty.

Third, MPCC alleges court decisions addressing Iowa and Nebraska state law claims prove the Negligence Duty must be reversed. *MPCC-Amicus,* p.5 (discussing *Freeman v. Busch*, 349 F.3d 582 (8th Cir. 2003) and *Corso v. Creighton Univ.*, 731 F.2d 529 (8th Cir. 1984). These decisions, based on state law outside of Minnesota, are irrelevant. MPCC and UST admit *Abbariao* imposed a "duty" on private universities in *Minnesota* to provide their students due process rights parallel to those provided public university students. *MCPP-Amicus,* p.7; *UST-Br.,* p.32.

Fourth, MPCC alleges that the Negligence Duty is incompatible with *Alsides*, which prohibited educational malpractice claims. *Id.,* p.17 (citing *Alsides v. Brown Inst., Ltd.,* 592 N.W.2d 468 (Minn. Ct. App. 1999). But *Alsides* explicitly permitted tort claims other than those "challeng[ing] the general quality of the instructors and

26

the education they received," and remanded the case for an evaluation of such claims. *Alsides,* 592 N.W.2d at 473. Since John does *not* challenge the general quality of the education UST professors provided him, *Alsides* is distinguishable.

Fifth, MPCC repeats UST's argument that the *Abbariao*-based Negligence Duty cannot be squared with *Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464 (Minn. App. 2001). *MPCC-Amicus,* pgs. 8, 10; *UST-Br.,* pgs.30-32. The District Court properly rejected these arguments for many of the reasons in John's Brief. *Compare,* A-36-41; with *John-Br.,* pgs.14-15.

Sixth, MPCC advances arguments devoid of citations to the record or external sources. For instance, MPCC claims that providing due process rights to university students would (a) decrease the number of "faculty and staff" willing to "serve" in disciplinary matters;[11] (b) prohibit universities from "design[ing]" disciplinary proceedings that "help young adults acknowledge their behavior and learn from it;"[12] (c) reduce reporting of sexual misconduct because accusing students would have to re-live their "trauma" by being "forc[ed] . . to confront" students who they alleged assaulted them;[13] and (d) impose unreasonable demands because universities would

---

[11] *MPCC-Amicus,* p.22.

[12] *Id.,* p.23.

[13] *Id.*

27

somehow be unable to train their highly educated faculty and staff on how to conduct cross-examination. *MPCC-Amicus,* p.24.

MPCC's "sky is falling" arguments should be rejected. MPCC offers no proof that the countless universities across the country *already* providing the common-sense due process protections addressed in this case are experiencing any of the negative impacts alleged by MPCC.

Finally, MPCC demands reversal of the Negligence Duty because it allegedly would hinder private universities' ability to successfully obtain FRCP 12(B)(6) dismissals of students' lawsuits. *MCPP-Amicus,* p.17. (discussing *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn. 1983); *Jindra v. City of St. Anthony*, 533 N.W.2d 641, 644 (Minn. Ct. App. 1995)). MPCC alleges FRCP 12(B)(6) dismissals should be easy to obtain in part because MPCC claims the District Court lacked a basis for stating sexual misconduct disciplinary findings cause "significant and permanent" adverse consequences. *MCPP-Amicus,* p.6.

According to MPCC, labeling a student a sex offender should be seen as "a valuable educational device" that is "part of the teaching process." *Id.,* p.14. (citing *Goss,* 419 U.S. 580, 583). In support, MPCC cites the *N.S.* decision, from a district court in the Sixth Circuit. *Id.,* p.14 (quoting *N.S.* 2017 WL 1347753, at *11).

MPCC neglected to mention that *N.S.* involved young, public school students with autism. *N.S.,* 2017 WL 1347753, at *11. MPCC also omitted the following

Appellate Case: 19-1594     Page: 28     Date Filed: 07/30/2019 Entry ID: 4813646

italicized material from its quotation of *N.S.*: "The discipline of students is primarily educational in nature *and isolations and restraints are considerations for the classroom environment, where students need to have their behavior managed in order to learn effectively.*" *Id*. MPCC may have omitted this material so it would not need to explain how a decision dealing with the "isolations and restraints" of autistic elementary students is relevant in evaluating the impact of universities improperly branding students as sex offenders and thereby significantly interfering with, or completely preventing, students from achieving their educational and life goals.

The Sixth Circuit, however, addressed this issue quite clearly in *Baum* – something John's Brief pointed out. *John-Br.,* p.47 (quoting *Baum*, 903 F.3d at 582). Specifically, John noted how *Baum*—which postdated *N.S.* by more than a year— stated:

> Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct . . . *Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. The student may be forced to withdraw from his classes and move out of his university housing. His personal relationships might suffer. And he could face difficulty obtaining educational and employment opportunities down the road, especially if he is expelled. John-Br.,* p.47 (quoting *Baum*, 903 F.3d at 582)

The abovementioned facts and law point to one reasonable conclusion: the *Abbariao*-based Negligence Duty requires MPCC's members provide students the common-sense due process protections addressed in John's Brief.

Appellate Case: 19-1594     Page: 29     Date Filed: 07/30/2019 Entry ID: 4813646

## VII.  **MPCC's Academic Freedom Arguments Lack Merit.**

UST and MPCC allege the Negligence Duty violates academic freedom by inappropriately allowing the government to second-guess university disciplinary decisions. *MPCC-Amicus,* pgs.3-4, 11-15 (advancing academic freedom arguments); *UST-Br.,* pgs.34-35 (alleging courts should not second-guess university disciplinary decisions). MPCC approvingly cites *Osteen*'s admonition "that one dimension of academic freedom is the right of academic institutions to operate free of heavy-handed governmental, including judicial, interference." *Id.,* p.14 (quoting *Osteen,* 13 F.3d at 225-26).

Regarding allegations of sexual misconduct on college campuses, however, scant evidence exists—until very recently at least—that MPCC and its members had any problem with "heavy-handed governmental, including judicial, interference." *Id*. Indeed, UST and MPCC repeatedly tout their *eagerness* to create Title IX disciplinary proceedings that comply with Minnesota law and/or U.S. Department of Education's ("DOE") regulations that they believe allow Accuser-Favored Bias. *See e.g., John-Reply,* pgs.2-3, 16 (discussing UST's claims that its Accuser-Favored Bias complies with Minnesota law and/or DOE regulations); *MPCC-Amicus,* p.6 (discussing DOE regulations).

The list of accuser-friendly "governmental . . . interference" that MPCC finds acceptable includes the DOE's Office for Civil Rights' ("OCR") 2011 Dear

Appellate Case: 19-1594     Page: 30     Date Filed: 07/30/2019 Entry ID: 4813646

Colleague Letter and OCR's 2014 "Questions and Answers" guidance. *See e.g.,*

*https://www.acenet.edu/news-room/Pages/Comments-ED-2019-Title-IX-rule.aspx*

(containing MPCC's opposition to OCR's proposed changes to OCR's 2011 Dear

Colleague Letter and 2014 "Questions and Answers")(last accessed July 18, 2019).

On the other hand, MPCC opposes "governmental . . . interference" that would

limit Accuser-Favored Bias and require the common-sense due process protections

contemplated in the *Abbariao*-based Negligence Duty. *MPCC-Amicus,* p.6, fn.6.

For instance, MPCC wants DOE to eliminate proposed regulations (a) requiring

cross-examination and live hearings; (b) mandating universities give parties the right

to inspect "any evidence . . . directly related" to allegations of sexual misconduct;

and (c) prohibiting investigators from serving as adjudicators. *Compare*

*https://www.acenet.edu/news-room/Pages/Comments-ED-2019-Title-IX-rule.aspx*

(containing MPCC's position statements regarding items a-c), *with*

*https://www2.ed.gov/about/offices/list/ocr/docs/title-ix-nprm.pdf, at § 106.45, subd.*

*(b)(3)(4)*(containing DOE's proposed regulations: (a) prohibiting investigators from

serving as adjudicators; (b) requiring live hearings; and (c) giving parties the right

to cross-examination)(last assessed July 18, 2019).

As Professor Peter Byrne noted in the *Yale Law Journal*: "The term 'academic

freedom' should be reserved for those rights necessary for the preservation of the

unique functions of the university, particularly the goals of disinterested scholarship

31

and teaching." J. Peter Byrne, "Academic Freedom: A 'Special Concern of the First Amendment'," 99 *Yale L.J.* 251 (1989). By contrast, MPCC's invoking academic freedom for inconsistent opposition to government oversight of disciplinary matters that are distant from "disinterested scholarship and teaching" misunderstands the concept. *Id.*

As a result, John requests this Court reject UST and MPCC's hypocritical academic freedom arguments.

## CONCLUSION

For the reasons set forth above, MPCC's Amicus Curiae provides no factual or legal basis for reversing the *Abbariao*-based Negligence Duty. John respectfully requests this Court find UST violated the Negligence Duty in allowing Accuser-Favored Bias to result in John's unlawful suspension from UST.

To do otherwise would prohibit Minnesota's private university students from seeking legal recourse when their universities unlawfully label them sex offenders, cause them to suffer mental anguish, and deprive them of their right to an education, in violation of federal law and university policies.

32

Respectfully Submitted,

/s/ Eric Rosenberg
Eric Rosenberg (0069958)
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
Phone: 740.644.1027
Fax 866.498.0811 fax
erosenberg@rosenbergball.com


/s/Beau D. McGraw
Beau D. McGraw, I.D. No.: 31190X
McGraw Law Firm, PA
10390 39th Street North, Suite 3
Lake Elmo, MN 55042
Telephone: (651) 209-3200
beau@mcgrawlawfirm.com


## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), I hereby certify that this brief is proportionally spaced, 14-point Times New Roman font. Per Microsoft Word software, the brief contains 5,956 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/ Eric J. Rosenberg
Counsel for Plaintiff-Appellant John Doe

Appellate Case: 19-1594    Page: 33    Date Filed: 07/30/2019 Entry ID: 4813646

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2019, a copy of the foregoing REPLY BRIEF OF APPELLANT was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered parties.


*/s/ Eric J. Rosenberg*
Counsel for Plaintiff-Appellant John Doe